UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | | |
|---|---|---|
| IRA D. SOCOL,<br><br>Plaintiff<br><br>v.<br><br>ALBEMARLE COUNTY SCHOOL BOARD, *et al.*<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.: 3:18cv00090 |

MEMORANDUM IN SUPPORT OF MOTION FOR PROTECTIVE ORDER AND TO LIMIT DEPOSITION EXAMINATIONS

Third-party Albemarle County School Board, by counsel, submits this memorandum in support of its motion for a protective order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure.

RELEVANT PROCEDURAL AND FACTUAL BACKGROUND

On October 1, 2018, the plaintiff filed his original Complaint against both Albemarle County School Board and Superintendent Haas, asserting that the School Board wrongfully terminated Mr. Socol's employment in violation of the property interests guaranteed by the Fourteenth Amendment (Count I), that the defendants injured his liberty interest in his good name and reputation under the Fourteenth Amendment (Count II), that the defendants breached an employment contract with him when the School Board terminated his employment (Count III), and that the defendants defamed him in his trade or business by making public statements related to his termination (Count IV).

The School Board moved to dismiss the claims against it, and on June 25, 2019, this Court granted the defendant's motion, dismissing it as a party to this action.

In ruling on Dr. Haas' motion to dismiss, the Court also dismissed both the substantive due process claim under the Fourteenth Amendment and the breach of contract action related to Mr. Socol's employment. In doing so, this Court dismissed all claims related to Mr. Socol's assertion that he had a property interest in his job that was violated by either the School Board or Dr. Haas. Consequently, Mr. Socol has no viable claim related to the termination of his employment with the School Board.

With respect to Count II – the liberty interest claim – the Court found that Mr. Socol had plausibly stated a liberty interest claim against Dr. Haas based upon the allegation that Dr. Haas' stated that Mr. Socol "deliberately and egregiously misused purchase cards." (ECF 21, p. 16-18.) Despite that finding, the Court held that the plaintiff failed to plead a claim for municipal liability under § 1983 with respect to the Fourteenth Amendment claim and dismissed the claim against the School Board.

In dismissing the liberty interest claim against the School Board, the Court found that the plaintiff did not allege that the School Board knew that Dr. "Haas intended to publicize the basis for Socol's termination without providing a name-clearing hearing, much less plausibly demonstrate that they ratified Haas' decision." (ECF 21, p. 21.) Although Dr. Haas is not Mr. Socol's employer and owes no duty to provide Mr. Socol with any due process rights related to his employment, a fair reading of the Court's opinion is that it agreed that the Fourteenth Amendment liberty interest claim for failure to provide a name-clearing hearing prior to announcing the reasons for Mr. Socol's termination could proceed against Dr. Haas in his individual capacity. (*Id*., p. 21.)

With respect to the remaining state law claim of defamation per se, the Court found that the plaintiff plausibly stated a claim against Dr. Haas regarding his purported statements to Dr. Moran and Dr. Castner regarding the basis for Mr. Socol's termination. (*Id*., p. 27.)

Since being dismissed as a party, the School Board has responded to the plaintiff's subpoena *duces tecum* and has produced a banker's box full of documents for Mr. Socol's review. The School Board has also engaged in discussions with the plaintiff related to discovery depositions for current and former School Board employees and for a corporate designee. After much back and forth related to the deposition of a corporate designee for the School Board, the plaintiff issued a Rule 30(b)(6) deposition notice, which is attached as Exhibit A to the Declaration of Ross J. Holden. The School Board has objected to the topics identified in the Notice and has attempted to resolve the School Board's objections through counsel without involvement of the Court.

The School Board's objections, as stated more specifically in Mr. Holden's Declaration, are that the topics in issue are almost entirely irrelevant to the surviving Fourteenth Amendment liberty interest and defamation claims, the time period of the requests is unnecessarily broad, and the requests are unduly burdensome on a third-party and are not proportional to the needs of the case given the issues at stake in the litigation, the importance of the discovery in resolving the issues, and the burden of the discovery on the School Board.

The plaintiff scheduled the corporate designee's deposition for April 29, 2021. This deposition date was chosen solely by the plaintiff without the consent of the School Board, which was attempting to resolve its objections to the breadth and scope of the Rule 30(b)(6) notice at the time that plaintiff issued the notice and subpoena for the designee's appearance. The School Board simply does not have sufficient time to prepare designees to respond to the

topics identified in the Notice and seeks to limit the inquiry into many of the topics identified for discovery to only those issues that are relevant to the discovery in light of the nature of the pending claims that survived the motions to dismiss. As the deposition date is less than two weeks away, the School Board also seeks a stay of the deposition until such time as this motion may be heard and decided.

ARGUMENT

I. STANDARD

Rule 26(c) provides that a Court may issue a protective order, for good cause shown, to "protect a person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). The movant bears the burden of establishing "good cause" by showing that "specific prejudice or harm will result if no protective order is granted." *United Sates ex rel. Davis v. Prince*, 753 F. Supp. 2d 561, 565 (E.D. Va. 2010) (quoting *Phillips v. Gen. Motors Corp.*, 307 F.3d 1206, 1210–11 (9th Cir. 2002)).

Many of the topics of discovery, as identified more fully below, are outside of the scope of permissible discovery under Rule 26(b)(1) as the requests are not only not relevant to the surviving claims but the requests are also not proportional to the issues at stake in the action or important to resolve the issues in the remaining claims and create an undue burden on a third party. Accordingly, the School Board's motion for a protective order should be granted.

II. GOOD CAUSE EXISTS TO LIMIT THE PROPOSED DISCOVERY

Broad discovery is generally permitted in civil cases. *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). "Relevance is not, on its own, a high bar." *Va. Dep't of Corrs. v. Jordan*, 921 F.3d 180,

188 (4th Cir. 2019), but discovery, "like all matters of procedure, has ultimate and necessary boundaries." *Hickman*, 329 U.S. at 507. Courts must limit the frequency or extent of proposed discovery if it is "outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(iii). Although Rule 26(b)(1)'s relevance inquiry does not, itself, pose a "high bar," its proportionality requirement mandates consideration of multiple factors in determining whether to allow discovery of even relevant information. *Jordan*, 921 F.3d at 188–89. These include: "the importance of the issues at stake in the action … the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

A. <u>The proposed discovery is not relevant to any current claim in this case.</u>

As a former party to this case, the School Board is acutely aware of the issues of this case and the nature of the factual allegations related to those claims. As stated above, all claims related to any assertion of a right to employment with the School Board or allegations of wrongful termination have been dismissed. Nevertheless, the plaintiff seeks extensive discovery by way of a corporate designee in topics designed to elicit information only germane to those dismissed claims.

For example, topic (a) seeks a designee to testify as to the following: The personnel policies, regulations and laws that governed ACPS related to the hiring, review, investigation and/or termination of ACPS employees from the period from January 1, 2014 until December 31, 2019, including, without limitation, the authority of the superintendent and other employees or officers to terminate ACPS employees.

While the School Board would concede that the investigation into Mr. Socol's procurement violations is at least relevant to his liberty interest and defamation claims insofar as

the information gathered during the investigation formed at least part of the basis for Dr. Haas' purported statements related to Mr. Socol's procurement violations, the remaining topics are not. Mr. Socol has no viable claim related to his hiring, any performance reviews, or his termination by the School Board. Mr. Socol held multiple different positions while employed by the School Board, was interviewed and hired for each such position, and had multiple performance reviews. (*See* Decl. ¶ 9.) None of the facts related to such topics are germane to his liberty interest or defamation claims.

Even if this Court found such information to somehow be relevant, no such rationale exists for Mr. Socol's request to seek information reaching back to January 1, 2014 and extending through December 31, 2019. Mr. Socol was terminated on August 1, 2018. There is no relevant basis for Mr. Socol to engage in discovery of such topics for more than four years prior to his termination or sixteen months after his termination.

Finally, as Mr. Socol's termination is not in issue in this case since the Court dismissed Counts I and III, discovery into the authority of the superintendent "and other employees or officers" to terminate the School Board's employees is not warranted even under this Circuit's liberal definition of "relevant" because the legitimacy of Mr. Socol's termination is not an issue to be litigated in this matter.

With respect to topic (b), only issues related to the purchase of furniture for A-Tech by the Steering Committee are relevant to Mr. Socol's claims. As Mr. Holden states in his Declaration, however, the request is overly broad and unduly burdensome in that it is not narrowly tailored to reach the issues related to Mr. Socol's purchase of furniture using his department's P-cards. Instead, the plaintiff seeks discovery into "the formation and activities of, and any investigations or internal communications related to, the A-Tech Steering

Committee….includ[ing] the following: the process used to establish and populate the committee; the creation and approval of the mandate of the Committee…; the deliberations and actions of the Committee and its members an staff regarding the acquisition of furnishings and other tangible personal property for the projects within the committee's purview; the existence and contents of relevant documents in possession of ACPS related to the Committee (including, without limitation, any minutes or notes taken by Elodie Wolfe or any other person stored on ACPS information technology); any allegations regarding violations of ACPS policy related to the activities of the Committee or any of its members or staff (including any investigations thereof); and the identity and activities of all personnel, including employees and officers of ACPS and members of the Albemarle County School Board, who participated in any way in the formation, deliberations and/or actions of the Committee." (Decl., Ex. A.)

The breadth of this request is astonishing in light of the nature of the surviving claims. The formation of the Committee, its mandate, the deliberations of the Committee, its members, and staff, and any personnel investigations for allegations of any ACPS policy violation are unrelated to the plaintiff's claim that Dr. Haas denied him a name-clearing hearing before publishing the reason for his termination or his claim that Dr. Haas' statements to the former superintendents injured him in his trade or business.

Even if a jury determined that Dr. Haas should have granted Mr. Socol an opportunity to rebut the allegations supporting his termination for violation of the procurement policies prior to publicly stating the reasons for his termination, that decision would not have any impact on the legitimacy of Mr. Socol's termination for those violations. This Court has already determined that Mr. Socol did not have a property interest in his job. He was an at-will employee without even grievance rights. A name-clearing hearing would not have provided Mr. Socol with access

to any of the information he seeks in discovery through the School Board. At best, it would have provided him with an opportunity to state his reasons why he believed the personnel decision was wrong. Even if Mr. Socol could somehow establish that his termination was "not fair" because others also violated policy but were not terminated, such information would neither prove nor disprove his Fourteenth Amendment claim. The information Mr. Socol seeks in this request is simply not relevant to any claim or defense in this case.

Similarly, with respect to Mr. Socol's defamation per se claim, it is an undisputable fact that Mr. Socol was terminated for violating the School Board's purchasing policies. While Mr. Socol may now dispute whether he did, in fact, violate the policies,[1] he cannot and does not dispute that violations of the procurement policy were the reasons provided to him for his termination. Mr. Socol asserts that Dr. Haas' opinion statement to Dr. Pamela Moran that Mr. Socol's policy violations were "deliberate and egregious" is the basis for his defamation claim.

Because the only genuine issue in Mr. Socol's defamation claim is whether the violations were deliberate and egregious, Mr. Socol should not be permitted to relitigate the legitimacy of his termination by burdening the School Board's personnel with irrelevant discovery requests into the creation and mandate of the Committee, the identity and activities of all members who served on the Committee and any person involved in any way with the Committee, the deliberations of the Committee, and any investigations into any personnel who served on the Committee related to any alleged policy violations (especially as employees who were investigated for policy violations have confidentiality, and potentially due process, rights that are implicated by release of such information to a third party).

[1] Prior to his termination Mr. Socol admitted to violating the purchasing policies in written communications with the Superintendent and in the investigation conducted into the policy violations by the human resources personnel.

Finally, while the School Board does not contest that the School Board's purchasing policies are relevant areas of inquiry on discovery, any actions by the School Board to enforce the purchasing policy against an employee, including any remedial or disciplinary action taken against such employee, for a period of over five years (four years before the events that gave rise to Mr. Socol's termination and almost a year and a half after his termination) is outside the bounds of relevancy for Mr. Socol's claims for the reasons stated above.

Because the topics of inquiry, as stated above, are not relevant to any claim or defense in this case, the requests should be limited, and inquiry into such topics in discovery should not be permitted.

B. <u>The requested discovery is not proportional to the needs of this case.</u>

Whether a discovery request is proportional is determined by "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). *Brown-Thomas v. Hynie*, Civil Action No. 1:18-cv-02191-JMC, 2020 U.S. Dist. LEXIS 214130, at *10 (D.S.C. Nov. 17, 2020).

As noted above, the reasons that warrant limiting the deposition topics on the basis of relevancy similarly apply to the question of proportionality – particularly because the requested discovery is not important to resolve any of the claims or defenses of the remaining claims in this case. Moreover, as stated in Mr. Holden's declaration, complying with the discovery request would impose a significant burden on the School Board's personnel.

The requests for information stated in paragraph (a) would require at least two School Board designees, and both of whom would be required to locate, interview, and seek information

from many current and former employees – including Mr. Socol, Dr. Pamela Moran (who is the plaintiff's business partner), employees who are no longer living in the area, current and former School Board members, every member of every hiring panel for every position to which Mr. Socol applied, and any employee who addressed any personnel matter for Mr. Socol, including human resources staff over the years. (*See* Decl.¶¶ 8-9.)

As to paragraph (b), to prepare Ms. Snoddy to testify as to the exceedingly broad scope of the request, she must likewise become a subject matter expert in at least thirteen (13) different areas of designing and opening a charter school by conducting research into documents and interviewing at least eighteen (18) Committee members as well as numerous other employees and staff members who assisted the Committee, subcommittee members, and current and former School Board members. (Decl. ¶¶ 9-10, 13-15.) Of the latter, she must also delve into their deliberations and decision-making process for chartering the school and establishing its mandate. (Decl. ¶ 12.) To perform her responsibilities, she must also interview Mr. Socol and review any documentation he may have that is relevant. (Decl. ¶ 16.)

To ably testify on behalf of the School Board in the myriad topics identified by the plaintiff related to A-Tech, Ms. Snoddy would effectively have to cease her work as Deputy Director of Building Services and devote her full time and attention to preparing for the deposition, which could take months depending upon the volume of documents and the availability of witnesses. (Decl. ¶ 17.) Alternatively, the School Board would have to designate as many witnesses as was necessary to satisfy plaintiff's demands, which the School Board could not determine without performing the initial interviews of all individuals who worked in any capacity to open A-Tech. (*See* Dec. ¶ 18.)

Additionally, much of the requested information is in the possession of the plaintiff, who served as a Project Sponsor and directly supervised at least one of the former employees with knowledge about the Steering Committee, or available to him through his close continuing relationship with Dr. Moran, who was the former superintendent. (Decl. ¶¶ 19-20.)

The burden on the School Board, as a third party to the litigation, is not warranted considering the nature of the remaining claims.

Moreover, the plaintiff seeks confidential personnel files, in both this topic and in the topics identified in paragraph (c), related to investigations and disciplinary actions for other, unrelated, third party employees and former employees. Such an intrusion into their confidentiality is not warranted as it serves no purpose other than to harass and burden unrelated third parties who have no interest in the litigation. (Decl. ¶ 21.)

Finally, the plaintiff has also indicated that Ms. Snoddy and Ms. Collins – another Steering Committee member – are expected to be subpoenaed for depositions as fact witnesses. Requiring these third parties to submit to two depositions on subject matters that are largely not relevant to the case would be excessive and burdensome to them.

With respect to paragraph (c), the School Board notified the plaintiff more than a year prior to the issuance of the Rule 30(b)(6) notice and again as recently as three weeks ago that procurements and application of the Virginia Public Procurement Act and the Albemarle County Purchasing Manual are handled by the Purchasing Department of Albemarle County. The School Board cannot compel the employee of a third party to provide testimony on its behalf. (Decl. ¶ 23.)

Because the requested discovery is not proportional to the needs of the case, the School Board requests that the deposition topics be limited.

CONCLUSION

In summary, as stated by Mr. Holden, "to comply with the Notice, the [School Board] will be compelled to make multiple witnesses available for deposition who, in turn, will need to review voluminous documents created over an extensive period of time, find former employees who have resigned or retired and obtain information they may possess, and while doing so, ignore their job responsibilities to provide an education to over 14,000 students during this especially fraught and difficult time. Preparing witnesses to testify regarding the information that plaintiff seeks will inflict an enormous burden and disruption to the [School Board's] educational operations. Most important, that burden is more onerous because the noticed topics have no relevance to the lawsuit's remaining claims or defenses and the demands are disproportionate to the needs of the case." (Decl. ¶ 26.) Accordingly, the School Board requests that its motion for a protective order and to limit deposition examinations be granted.

WHEREFORE, third-party Albemarle County School Board, by counsel, requests that its motion be granted, that the identification and deposition of the School Board's designees be stayed pending resolution of this motion, that the topics of depositions for School Board employees be limited as requested, and for such other and further relief as the nature of this case may require.

Respectfully submitted,

ALBEMARLE COUNTY SCHOOL BOARD

/s/ Jennifer D. Royer

Jennifer D. Royer, VSB # 68099
ROYER LAW FIRM, P.C.
Post Office Box 4525
Roanoke, Virginia 24015
540-788-2982 Telephone

540-675-4093 Facsimile
jroyer@royerlawfirm.com
Counsel for Albemarle County School Board

CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of April, 2021, I have electronically filed this document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Jeffrey R. Adams
Lucas I. Pangle
Wharton, Aldhizer & Weaver, PLC
125 S. Augusta Street
Staunton, Virginia 24401

/s/ Jennifer D. Royer

Jennifer D. Royer, VSB # 68099
ROYER LAW FIRM, P.C.
PO Box 4525
Roanoke, Virginia 24015
540-788-2982 Telephone
540-675-4093 Facsimile
jroyer@royerlawfirm.com
Counsel for Albemarle County School Board