UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | | |
|---|---|---|
| IRA D. SOCOL, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | Case No.: 3:18cv00090 |
| v. | ) | |
| | ) | |
| ALBEMARLE COUNTY SCHOOL BOARD, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PROTECTIVE ORDER AND TO LIMIT DEPOSITION EXAMINATIONS

Third-party Albemarle County School Board, by counsel, submits this reply memorandum in support of its motion for a protective order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure.

## ARGUMENT

### I. MR. SOCOL'S DISCOVERY REQUESTS SEEK TO CHALLENGE THE SCHOOL BOARD'S DECISION TO TERMINATE HIS EMPLOYMENT.

Stripped to its most basic layer, the purpose of Mr. Socol's discovery requests to the School Board is to gather information that he believes will show that the School Board's decision to terminate him was not justified. This Court has already decided that Mr. Socol does not have the right to challenge his termination in these proceedings, so such discovery is inappropriate and is not germane to any issue remaining in the lawsuit.

The only questions remaining in this case relate to (1) what Dr. Haas said, (2) why Dr. Haas made those statements, (3) whether Dr. Haas was required to provide Mr. Socol with a name-clearing hearing before making those statements, and (4) the effects of those statements.

In an attempt to challenge the School Board's decision-making, though, the plaintiff repeatedly conflates the actions of Dr. Haas and the School Board throughout his memorandum in opposition, arguing that he needs discovery into the School Board's actions to prove his claims against Dr. Haas. Dr. Haas and the School Board, however, are not the same.

In the Complaint, Mr. Socol alleges that Dr. Haas stated that he "misused P-cards deliberately and egregiously" and that he "admitted to the conduct in the report." (Compl. ¶¶ 93, 96.) Based upon those two purported statements, Mr. Socol seeks to turn the School Board's inner deliberations inside out to show that he did not act alone in violating the School Board's policy (which is not a statement that Dr. Haas is alleged to have made) and that his violations were not so bad when compared to other instances of alleged misconduct by other employees (and therefore could not be objectively egregious or justify his termination). The claims against Dr. Haas, however, have no relation to the School Board's action in terminating Mr. Socol.

This Court has previously determined that the School Board is not responsible for any statement that Dr. Haas may have made related to Mr. Socol's termination, that Mr. Socol does not have any property rights in his employment with the School Board, and that Mr. Socol does not have any claims against the School Board. Accordingly, this Court should deny Mr. Socol the right to challenge the School Board's actions through unnecessary discovery into matters that are not germane to Mr. Socol's remaining claims.

A. Reasonable discovery issued to Dr. Haas regarding the remaining issues in this case will demonstrate that the discovery requested of the School Board is not germane to this case.

Even if Mr. Socol found evidence to support his position that his termination by the School Board was not justified, such information is not germane to determining what Dr. Haas actually said, what he meant by what he said, or what his state of mind was in making such

statements.  Only Dr. Haas can answer those questions – that information cannot be supplied by eighteen different School Board employees (or former employees) or boxes of documents about every personnel decision made related to Mr. Socol, the School Board's – not Dr. Haas' – decision to charter a new high school, the School Board's creation of a subcommittee of professionals to build and develop that school, the School Board's promulgation of purchasing policies, the School Board's interpretation and enforcement of procurement policies for a five year period, or any other decision of the School Board.

Instead of tilting at windmills to discern the statements Dr. Haas made and the rationale for why he made them, Mr. Socol should begin his inquiry by directing such discovery requests not to the School Board but instead to Dr. Haas.

If Mr. Socol first issues discovery to Dr. Haas, he will learn what Dr. Haas said to Dr. Moran and the circumstances under which those statements were made.  He will learn that Dr. Haas unequivocally believes that Mr. Socol violated the School Board's purchasing policies and the reasonable bases for Dr. Haas' belief.  He will learn that Dr. Haas' belief is founded upon statements made to the School Board by the County's Purchasing Agent and County Attorney and that those statements are the very same statements that the Purchasing Agent and County Attorney first made to Mr. Socol when they advised him that his purchases were in violation of the School Board's purchasing policy.

If Mr. Socol first issues discovery to Dr. Haas, he will learn that Dr. Haas' belief that Mr. Socol violated the School Board's purchasing policies is also based upon Mr. Socol's email admission to Dr. Haas while the School Board was voting on whether to ratify Mr. Socol's purchases (which ratification would not have been necessary if the purchases were made in

compliance with policy) in which Mr. Socol acknowledged fault, offered to resign, and began preparations for returning the furniture to the vendors.

If Mr. Socol first issues discovery to Dr. Haas, he will learn that the School Board instructed Dr. Haas to conduct an investigation into the concerns relayed by the County's Purchasing Agent and County Attorney, which he did, and that Dr. Haas' concerns were heightened by Mr. Socol's apparent efforts to avoid being interviewed by human resources personnel for weeks.

If Mr. Socol first issues discovery to Dr. Haas, he will learn that the report from human resources only confirmed that Mr. Socol admitted in his interview to the conduct that the County's Purchasing Agent and County Attorney previously outlined to both Mr. Socol and the School Board as violating the School Board's purchasing policies and that Mr. Socol himself acknowledged in his email to Dr. Haas.

If Mr. Socol first issues discovery to Dr. Haas, he will learn what weight, if any, Mr. Socol's previous personnel decisions had on Dr. Haas' belief that Mr. Socol's policy violations were deliberate and egregious.

If Mr. Socol first issues discovery to Dr. Haas, he will learn what weight, if any, Dr. Haas placed on rumors of violations of the purchasing policies by other personnel in forming his belief that Mr. Socol's actions were deliberate and egregious.

If Mr. Socol first issues discovery on these issues to Dr. Haas, he will learn that none of his concerns about the School Board's decision-making – or the School Board's official position on these issues – are germane to his claims against Dr. Haas.

    B.    <u>The question of whether Mr. Socol acted "unilaterally" is not a genuine issue in this case.</u>

Assuming for the sake of argument that Mr. Socol is correct that the entire Steering Committee met and decided to violate the School Board's purchasing policies, it does not change the fact that Mr. Socol is the one who engaged in the conduct that gave rise to his discipline. Mr. Socol does not genuinely contest that he used his department's P-cards to make the purchases that the County's Purchasing Agent and County Attorney determined were in violation of the School Board's purchasing policy. Whether Mr. Socol had the support of his colleagues in violating the policy is of not material to the claims against Dr. Haas in this case.

Mr. Socol's argument is similar to that of the motorists who plead with police officers who pull them over for speeding not to give them a speeding ticket because others were also speeding, or they were "just going with the flow of traffic." That others were also violating the law does not nullify the violation of the motorist who was caught and punished. Similarly, even if other School Board employees violated the purchasing policy or even supported Mr. Socol's violation of the policy, such violations would not nullify Mr. Socol's violation or establish that Dr. Haas' belief that Mr. Socol committed such violation was not accurate.

For the purpose of this lawsuit, however, the question of whether the School Board was justified in "pulling over" Mr. Socol for his violation is not an issue before the Court in this case. As such, inquiry into Mr. Socol's personnel history and the School Board's interpretation and enforcement of its purchasing policy – which could be relevant to a challenge of the School Board's personnel decision if such claim was viable in this case – is not germane to the underlying issues in this lawsuit related to what Dr. Haas said, why he made those statements, whether he should have provided Mr. Socol with a name-clearing hearing prior to making those statements, or the impact of those statements.

C. The School Board's investigation into Mr. Socol's use of his department's P-cards to violate the purchasing policy is not a genuine issue in this case.

Mr. Socol states that he needs discovery into the investigation that gave rise to the report issued by the human resources department to prove that the allegations related to his violation of the purchasing policies is a lie. He states,

> While Mr. Socol disputes the finding of the report, there is no question that ACPS itself relied on the report in making the decision to terminate Mr. Socol for his alleged misconduct. Surely the Board cannot now take the position that there is *no* relationship between the report, and the investigation upon which it is based, and Mr. Socol's alleged misconduct. Accordingly, the report and the investigation upon which it is based, which are among the matter [sic] identified in item a of the Designation, are relevant to Mr. Socol's claims.

Memo in Opp., p. 11. Mr. Socol's argument could be persuasive *if* (a) the School Board's termination of Mr. Socol was an issue in this case or (b) the School Board was a party to this case. Neither are true. Dr. Haas is not the School Board, and the School Board is not Dr. Haas. The claims against Dr. Haas have no relation to the School Board's action in terminating Mr. Socol. This Court has previously determined that the School Board is not responsible for any statement that Dr. Haas may have made related to Mr. Socol's termination, that Mr. Socol does not have any property rights in his employment with the School Board, and that Mr. Socol does not have any claims against the School Board. Accordingly, this Court should deny Mr. Socol the right to challenge the School Board's actions through unnecessary discovery into matters that are not germane to Mr. Socol's remaining claims.

D. <u>The make-up, charter, and decision-making of the Steering Committee is not a genuine issue in this case or relevant to Mr. Socol's claims.</u>

Mr. Socol seeks broad discovery into the creation and actions of the Steering Committee in an asserted attempt to show that his actions in violating the School Board's policies could not be deliberate or egregious because the Steering Committee had tremendous pressure to accomplish the monumental task of opening a new school in a limited time under a tight budget.

Mr. Socol's attempts miss the mark. As a fundamental matter, violations of a purchasing policy – which is modeled after the Virginia Public Procurement Act and designed to force public employees to be good stewards of the public purse – do not cease to be violations simply because the violator believed himself to be justified in making the purchases in violation of the policy because the purchases had to be made quickly or on a budget. Mr. Socol's argument for violating the policy is nothing more than the excuse that he could not meet the challenges of the task while working under pressure. Such facts – even if they could be proven – do nothing to establish that his violations were not deliberate or egregious.

Even if this Court granted Mr. Socol unlimited discovery into every action ever taken by the School Board in creating the Steering Committee and every subsequent action taken by every member of the Steering Committee in furtherance of the Committee's goals, none of the discovery would prove or tend to prove – or disprove – whether Mr. Socol's actions were deliberate or egregious. Such discovery, however, would impose a tremendous burden on the School Board. As such, it is not proportional to the needs of this case and should not be allowed.

Moreover, if Mr. Socol is arguing at this stage of the proceedings that his actions in violating the policies, instead of being deliberate and egregious, were "a good faith response to the unusual challenges presented in trying to stand up an entire school in less than a year," he has already lost his case. Memo in Opp., p. 12. Instead of arguing facts that are provable or disprovable, Mr. Socol is no longer arguing whether Dr. Haas' statements were false because his actions do not constitute misconduct under the policy. Instead, he is arguing opinion – that his misconduct – while a violation of policy – is not "egregious and warranting discipline" but is, instead, "something merely to be ratified and overlooked, even if technically in violation of

policy." Opinions on matters of degree are still opinions and are not actionable. As such, Mr. Socol's arguments prove why such discovery is not warranted under the facts of this case.

## II. GOOD CAUSE EXISTS TO LIMIT THE PROPOSED DISCOVERY

As stated above, the requested information is not germane to the issues remaining in this case. Moreover, the requested information, even if deemed to be germane, is exceedingly overly broad both in scope and in requested timeframe. As such, it is not proportional to the needs of this case.

In response to the School Board's concerns about the length of time that it would take to prepare designees to testify and that preparing them would effectively require them to cease performing the jobs for which they were hired, Mr. Socol takes the position that such an imposition is warranted on a third party because the School Board manages a large operational budget, retains highly skilled professionals, and maintains documents in accordance with the law. By that argument, Mr. Socol would be justified in taking the corporate deposition of Microsoft because that company developed the software which was used to generate the spreadsheets for the furniture purchases in this case or Wayfair because that company supplied the furniture that was purchased using the P-cards. Those companies also have very large operational budgets, retain highly skilled professionals, and maintain documents in accordance with various laws. Nevertheless, this Court would not hesitate to find that such discovery would be unwarranted by the facts of this case. The burden on the School Board, as a third party to the litigation, is likewise not warranted considering the nature of the remaining claims.

Moreover, the plaintiff has not addressed the concerns about the confidential personnel files that it seeks related to investigations and disciplinary actions for other, unrelated, third party employees and former employees. Such an intrusion into the confidentiality of those employees

and former employees is not warranted as it serves no purpose other than to harass and burden unrelated third parties who have no interest in the litigation. (Decl. ¶ 21.)

Further, the plaintiff has also not addressed the fact that he intends to separately depose Ms. Snoddy and Ms. Collins – another Steering Committee member – as fact witnesses, which would likely require those third parties to submit to two depositions on subject matters that are largely not relevant to the case.

Finally, with respect to paragraph (c) of the Designation, the School Board notified the plaintiff more than a year prior to the issuance of the Rule 30(b)(6) notice that procurements and application of the Virginia Public Procurement Act and the Albemarle County Purchasing Manual are handled by the Purchasing Department of Albemarle County. The School Board cannot compel the employee of a third party to provide testimony on its behalf. (Decl. ¶ 23.) The plaintiff has not indicated that he is withdrawing his request for such depositions.

Because the requested discovery is not proportional to the needs of the case, the School Board requests that the deposition topics be limited.

CONCLUSION

For the foregoing reasons, third-party Albemarle County School Board, by counsel, requests that its motion be granted, that the topics of depositions for all School Board employees be limited as requested, for an award of its fees incurred in pursuing this motion, and for such other and further relief as the nature of this case may require.

Respectfully submitted,

ALBEMARLE COUNTY SCHOOL BOARD

/s/ Jennifer D. Royer
Jennifer D. Royer, VSB # 68099

ROYER LAW FIRM, P.C.
Post Office Box 4525
Roanoke, Virginia 24015
540-788-2982 Telephone
540-675-4093 Facsimile
jroyer@royerlawfirm.com
Counsel for Albemarle County School Board

CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of May, 2021, I have electronically filed this document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Jeffrey R. Adams
Lucas I. Pangle
Wharton, Aldhizer & Weaver, PLC
125 S. Augusta Street
Staunton, Virginia 24401

/s/ Jennifer D. Royer

Jennifer D. Royer, VSB # 68099
ROYER LAW FIRM, P.C.
PO Box 4525
Roanoke, Virginia 24015
540-788-2982 Telephone
540-675-4093 Facsimile
jroyer@royerlawfirm.com
Counsel for Albemarle County School Board