IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | | |
|---|---|---|
| IRA D. SOCOL, | ) | |
| Plaintiff, | ) | Civil Action No. 3:18-cv-00090 |
| | ) | |
| v. | ) | MEMORANDUM OPINION & ORDER |
| | ) | |
| MATTHEW S. HAAS, | ) | By:  Joel C. Hoppe |
| Defendant. | ) | United States Magistrate Judge |

This matter is before the Court on nonparty Albemarle County School Board's ("ACSB")

Motion for a Protective Order. ECF No. 42. The motion has been fully briefed and argued. ECF

Nos. 43, 45, 47, 51. For the reasons stated below, the Court hereby GRANTS in part and

DENIES in part ACSB's Motion for a Protective Order.

## I. Background[1]

This civil action concerns Plaintiff Ira D. Socol's ("Socol") termination from

employment with the Albemarle County Public School ("ACPS") system. Socol worked for

ACPS from 2013 through August 1, 2018. *See* Am. Compl. ¶¶ 10, 69, ECF No. 13. From

September 2017 through August 1, 2018, he directed ACPS's Department of Learning,

Engineering, Access, and Design ("LEAD"). *Id.* ¶ 13. In October 2017, then-Deputy

Superintendent Matthew S. Haas ("Haas") tasked Socol and LEAD with managing the

"development of a 'pilot high school center'" that was set to open in August 2018. *Id.* ¶ 30.

ACPS subsequently established a five-person "Steering Committee," of which Socol was a

member, to oversee the project. *Id.* ¶¶ 34–35. Its mission was (1) "to open a new technical high

---

[1] This section summarizes certain factual allegations in Plaintiff's Amended Complaint, ECF No. 13. While the Court does not repeatedly state, "Plaintiff *alleges* that Defendant did *X* and *Y*," this summary should not be taken as an endorsement of one version of the facts. *See Sines v. Kessler*, 324 F. Supp. 3d 765, 774 (W.D. Va. 2018) (Moon, J.).

school for ACPS," (2) "to open a new space for LEAD," and (3) "to open a new professional learning center, including a meeting area with a capacity of 150 persons and a new model classroom . . . all of which would be co-located in the same leased space." *Id.* ¶ 34. The Steering Committee had approximately five months to complete its goals. *Id.*

Relevant to Socol's claims, the Steering Committee was charged with furnishing the new facilities. *Id.* ¶ 38. It had a budget of $250,000 to procure "professional services (including architectural services), cabling, acoustical paneling, carpeting, and furniture," all of which had to be purchased and delivered before June 30, 2018. *Id.* Two Steering Committee members— Lindsey Snoddy and Rosalyn Schmitt—"had expertise and training with regard to finance, accounting[,] and/or procurement" and were "in positions that required such expertise and training." *Id.* ¶ 36; *see also id.* ¶ 35 (alleging that at the time, Snoddy was the Deputy Director of Building Services and that Schmitt was the Director of Facilities and Finance). Thus, Socol alleges that he "relied upon the expertise and training of Ms. Snoddy and Ms. Schmitt on matters related to finance and procurement compliance." *Id.* ¶ 37.

In April 2018, Snoddy and Schmitt proposed hiring interior designer Jennifer Greenhalgh at a rate of $150 per hour to "develop the furniture purchasing plans for the three projects." *Id.* ¶ 39. Although Socol opposed this proposal as a "waste of 'student money,'" the Steering Committee decided to adopt it. *Id.* Greenhalgh developed a proposal and recommended furnishings that would have cost $488,000. *Id.* ¶ 40. Her estimate was almost twice the Steering Committee's procurement budget, and it "did not include professional fees, appliances, cabling, carpeting, or furniture for LEAD offices and technical facilities, or the model classroom." *Id.* Accordingly, the Steering Committee asked an ACPS office assistant, Elodie Wolfe, to develop an alternate proposal. *Id.* ¶ 41. Wolfe presented options to the Steering Committee, proposing

furnishings from "online vendors, including Wayfair and IKEA." *Id.* ¶ 42. Next, "[t]he full

committee evaluated all of Ms. Wolfe's options and made consensus decisions." *Id.* "Without

objection from any of its members, the Steering Committee approved the purchase of the items

in Ms. Wolfe's alternate recommendations and . . . those items were all placed in a Google

spreadsheet to which all committee members had access." *Id.* The Steering Committee agreed to

use the LEAD Department's purchasing cards ("P-Cards") to buy the approved furnishings. *See

id.* ¶¶ 43–46. "[T]his agreement was reflected on [Wolfe's] Spreadsheet" and "was done for the

convenience of [Debora] Collins," who was a member of the Steering Committee and "whose

department would otherwise have had to make such purchases." *Id.* ¶ 44; *see also id.* ¶ 48

("None of the members of the Steering Committee objected to the purchases, either as to the

items purchased or as to the manner in which such purchases were made.").

In May 2018, however, Albemarle County Purchasing Agent Thomas Winder emailed

Socol and "question[ed] the multiple furniture purchases from the same vendor." *Id.* ¶ 50. Socol

"discussed the furniture purchases with Reeda Deane, who worked in Fiscal Services and

handled the budget for LEAD and other ACPS departments." *Id.* She told him: "this is what we

do all the time. Rosalyn [Schmitt] never said anything, no one's ever said anything." *Id.*

Subsequently, Socol met with Winder, Assistant County Attorney Amanda Farley, and others

regarding the furniture purchases. *Id.* ¶¶ 53–54. Farley "argued that the furniture purchases for

the three separate projects should have been aggregated, and as aggregated, would have required

competitive bidding." *Id.* ¶ 54. Nonetheless, Winder "agreed to a purchasing plan going forward

and stated[,] 'you just need the Board to approve this, it happens a lot.'" *Id.*

The next day, Socol asked Haas if Socol should attend an upcoming ACSB meeting "to

explain the furniture order and related matters." *Id.* ¶ 56. Haas responded in the negative, stating:

"no, it's nothing; we'll take care of it." *Id.* Approximately one week later, Haas told Socol that the ACSB had declined to approve the Steering Committee's purchases and that one ACSB member had called for Socol to "be fired." *Id.* ¶ 59. One month later, Socol met with ACPS's Assistant Director of Human Resources and Director of Educational Quality to discuss the purchasing issues. *Id.* ¶ 60. Although he had not been "informed of the existence of an investigation into his conduct," Socol learned at the meeting that "someone had gone through his emails and had assembled them without regard to date, making it seem like [his] objection to hiring Ms. Greenhalgh was an objection to the County Purchasing process." *Id.* ¶¶ 60–61. A week later, Haas asked Socol to "come to a meeting, 'to resolve all this.'" *Id.* ¶ 65. At the meeting, in the presence of other ACPS officials, Haas told Socol that he was "being terminated" and that his "time with Albemarle County ha[d] come to an end." *Id.* ¶ 66. Haas encouraged Socol to resign and offered him a severance package if he chose to do so. *Id.* Socol refused to resign, and Haas subsequently terminated his employment effective August 1, 2018. *Id.* ¶¶ 66, 69.

After terminating Socol's employment, ACPS gave him a redacted copy of a report it had prepared "related to the furniture purchase." *Id.* ¶ 70; *see also id.* ¶¶ 82–88. Socol alleges that the report incorrectly characterized his actions and "treat[ed] the furniture acquisition as if" Socol had acted unilaterally. *Id.* ¶¶ 85–86. To the contrary, Socol alleges that he was "but one member of the Steering Committee," *id.* ¶ 86, that he "reasonably relied" on Snoddy, Schmitt, and others "to ensure procurement compliance," *id.*, and that "other employees who . . . committed similar alleged violations of the ACPS's procurement policies" were "not terminated" and, "in some cases, [were] not disciplined in any way," *id.* ¶ 77; *see also id.* ¶¶ 78–81.

Central to his remaining claims, Socol also alleges that one week after his termination, Haas "informed Dr. Pamela R. Moran of ACPS's intention to terminate Mr. Socol and the alleged reasons for doing so." *Id.* ¶ 90. At the time, Moran was not affiliated with ACPS and "Haas [was] aware that Dr. Moran [was] a co-author with and business associate of Mr. Socol." *Id.* ¶¶ 91-92. Haas told Moran that Socol "misused P-Cards deliberately and egregiously" and "admitted to the conduct in [ASCB's] Report." *Id.* ¶¶ 93-96. Socol alleges that this statement was false and impugned his "reputation for honesty, integrity[,] and morality" in the educational administration community. *Id.* ¶ 94; *see also id.* ¶¶ 95, 97.

## II. Procedural History

In October 2018, Socol filed this civil action against ACSB and ACPS Superintendent Haas for conduct related to Socol's termination from employment. *See generally* Compl., ECF No. 1. He raised claims under 42 U.S.C. § 1983, alleging that ACSB and/or Haas deprived him of protected property and liberty interests related to his employment in violation of the due process clause of the Fourteenth Amendment. *See* Am. Compl. ¶¶ 118–31. He also raised claims under Virginia law, asserting a breach of contract claim against both Defendants and a defamation *per se* claim against Haas. *Id.* ¶¶ 132–43.

ACSB and Haas moved to dismiss for failure to state a claim under Rule 12(b)(6). *See* Mot. to Dismiss, ECF No. 4; Supp'l Br. in Supp. of Mot. to Dismiss, ECF No. 15. In June 2019, U.S. District Judge Glen E. Conrad granted in part and denied in part the motion to dismiss. *See Socol v. Albemarle Cnty. Sch. Bd.*, 399 F. Supp. 3d 523 (W.D. Va. 2019). Judge Conrad concluded that Socol's amended complaint failed to state a claim against ACSB and granted the motion to dismiss as to ACSB. *See id.* at 539–43. By contrast, Judge Conrad concluded that Socol stated two claims against Haas: (1) for defamation *per se* and (2) for deprivation of his

liberty interest without due process in violation of the Fourteenth Amendment. *See id.* at 537–39, 541–44.

On April 13, 2021, Socol served a Notice of Rule 30(b)(6) Deposition upon ACPS. *See* ACSB's Br. in Supp. Mot. for Protective Order ("ASCB's Br. in Supp.") Ex. 2, Rule 30(b)(6) Dep. Notice to ACPS (Apr. 13, 2021), ECF No. 43-1 ("Rule 30(b)(6) Dep. Notice"). The notice lists three topics for examination, which seek information regarding (a) all personnel actions taken by ACPS with regard to Socol; (b) the formation, activities, investigations, and internal communications of the Steering Committee; and (c) ACPS's acquisition policies, its promulgation of those policies to its employees, and its enforcement of those policies from January 1, 2014, through December 31, 2019.[2] Rule 30(b)(6) Dep. Notice 6–7.[3] The notice also lists multiple sub-parts to these topics. *See id.*

ACSB filed this motion for a protective order on April 17, 2021.  ACSB objects to Socol's Rule 30(b)(6) deposition notice and asks the Court to limit the scope of Socol's inquiry on the topics listed therein. ACSB's Mot. for Protective Order 1.

### III. The Legal Framework

The Federal Rules of Civil Procedure authorize litigants to subpoena nonparties to testify and/or produce documents relevant to the case. *See* Fed. R. Civ. P. 45(1)(A)(iii); *Bell, Inc. v. GE Lighting, LLC*, No. 6:14cv12, 2014 WL 1630754, at *6 (W.D. Va. Apr. 23, 2014) ("The scope of discovery for a nonparty litigant under a subpoena . . . is the same as the scope of a discovery

---

[2] For brevity, I paraphrase the deposition topics here. For the full text of each of the deposition topics, *see infra* Sections III.A.–III.C.; *see also* Rule 30(b)(6) Dep. Notice 6–7.

[3] ACPS did not label the exhibits attached to its brief in support of its Motion. *See generally* ACSB's Br. in Supp. Accordingly, I refer to ACSB's exhibits by the order in which they are attached to its brief. For example, the second exhibit attached to ACSB's brief, ECF No. 43-1 at 6–12, is referred to herein as "Ex. 2." Pinpoint citations to other documents filed electronically in this Court use the page numbers and the exhibit labels assigned by the filing party.

request made upon a party to the action, and a party is entitled to information that is relevant to a claim or defense in the matter at issue" (quotation marks and brackets omitted)) (Moon, J.). But because nonparties are "'strangers' to the litigation" who have "no dog in [the] fight," the standard of review for a nonparty subpoena is higher than that used to assess discovery requests to litigants. *Va. Dep't of Corrs. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019) (quoting *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998)) (alteration in original).

Rule 26 allows parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Relevance "is not, on its own, a high bar." *Jordan*, 921 F.3d at 188 (explaining that there may be a "mountain" of evidence that is "relevant in some way to the parties' dispute"); *see Kidwiler v. Progressive Paloverde Ins. Co.*, 192 F.R.D. 193, 199 (N.D. W. Va. 2000) (noting that "courts broadly construe relevancy in the context of discovery" and that "[r]elevance for discovery purposes is defined more broadly than relevance for evidentiary purposes"). But even relevant information may not be discoverable if it is not "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); *see* Fed. R. Civ. P. 26(b)(2)(C)(iii). In assessing proportionality, courts must consider multiple factors: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Moreover, when a subpoena is directed at a nonparty, "courts must give the recipient's nonparty status 'special weight,' leading to an even more 'demanding and sensitive' inquiry than the one governing discovery generally." *Jordan*, 921 F.3d at 189 (quoting *In re Public Offering PLE Antitrust Litig.*, 427 F.3d 49, 53 (1st Cir. 2005)). Thus, "even if they have information that

falls within the scope of party discovery," nonparties "should not be drawn into the parties' dispute without some good reason." *Id.* Accordingly, when assessing a subpoena directed to a nonparty, the court must also consider three additional factors. *Id.* at 189–90. First, the court must consider whether the requesting party "need[s]" the information sought, meaning that the information "likely (not just theoretically) . . . offer[s] some value over what the requesting party already has." *Id.* at 189. Second, the court must consider whether the requesting party can obtain the same or comparable information "that would also satisfy its needs" from other sources. *Id.* And third, the court must consider whether the request will impose a "cognizable burden[]" on the nonparty. *Id.* at 189–90 (explaining that "[a] nonparty should not have to do the work of tailoring a subpoena to what the requesting party needs" and listing costs, overbreadth, privacy, and confidentiality interests as examples of cognizable burdens); *see also Eshelman v. Puma Biotech., Inc.*, No. 7:16cv18, 2017 WL 5919625, at *7 (E.D.N.C. Nov. 30, 2017) ("A subpoena is overbroad if it does not limit the documents requested to subject matter relevant to the claims or defenses.") (internal quotation marks omitted).

Rule 26 allows a party or person "from whom discovery is sought" to move for a protective order. Fed. R. Civ. P. 26(c)(1). It also authorizes the court, "for good cause" shown, to issue such an "order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Id.* "To obtain a protective order under Rule 26(c), the party resisting discovery must establish that the information sought is covered by the rule and that [the party] will be harmed by disclosure." *In re Wilson*, 149 F.3d 249, 252 (4th Cir. 1998). Rule 26(c)'s "good cause" element further requires the resisting party to "present a 'particular and specific demonstration of fact[]' as to why a protective order should issue." *Baron Fin. Corp. v. Natanzon*, 240 F.R.D. 200, 202 (D. Md. 2006) (quoting 8A Charles Wright & Arthur Miller,

Federal Practice & Procedure § 2035 (2d ed. 1994)). At the same time, the party requesting

discovery from a nonparty "should be able to explain why it cannot obtain the same information,

or comparable information that would also satisfy its needs, from one of the parties to the

litigation." *Jordan*, 921 F.3d at 190.

## IV. Discussion

Whether the discovery Socol seeks in his nonparty subpoena to ACSB is relevant turns

on what he must prove to succeed on his remaining claims. Both of his remaining claims center

around his allegation that Haas defamed him by telling Moran that Socol's procurement

violations were "deliberate and egregious." *See Socol*, 399 F. Supp. 3d at 537–39, 541–43.

Socol's first claim against Haas is for defamation *per se*. To succeed on a defamation

claim in Virginia, a plaintiff must show "that the defendant (1) published (2) an actionable

statement with (3) the requisite intent." *Id.* at 543 (quoting *Chapin v. Knight-Ridder, Inc.*, 993

F.2d 1087, 1092 (4th Cir. 1993)); *accord Jordan v. Kollman*, 612 S.E.2d 203, 206 (Va. 2005).

"To be actionable, the statement must be not only false, but also defamatory," meaning that it

must tend "to harm the reputation of another as to lower him in the estimation of the community

or to deter third persons from associating or dealing with him." *Socol*, 399 F. Supp. 3d at 543

(internal quotation marks omitted) (quoting *Chapin*, 993 F.2d at 1092). Moreover, a statement

may be defamatory *per se* under Virginia law if it "impute[s] to a person unfitness to perform the

duties of an office or employment of profit, or want of integrity in the discharge of the duties of

such an office or employment" or "prejudice[s] such person in his or her profession or trade." *Id.*

(quoting *Tronfeld v. Nationwide Mut. Ins. Co.*, 636 S.E.2d 447, 449–50 (Va. 2006)).

Socol's second claim against Haas is a "stigma-plus" claim for deprivation of a protected

liberty interest without due process of law in violation of the Fourteenth Amendment. *See id.* at

537–39, 541–42 (concluding that such a claim could proceed against Haas in his individual

capacity). "[A] Fourteenth Amendment liberty interest is implicated by public announcement of

reasons for a[] [public] employee's discharge." *Id.* at 537 (quoting *Sciolino v. City of Newport

News*, 480 F.3d 642, 645–46 (4th Cir. 2007)) (internal quotation marks omitted). To succeed on a

"stigma-plus" claim, a plaintiff must show that his employer deprived him of a liberty interest by

making charges against him that "(1) placed a stigma on his reputation; (2) were made public by

the employer; (3) were made in conjunction with his termination or demotion; and (4) were

false," *id.* (quoting *Sciolino*, 480 F.3d at 646), and that he was deprived of such interest "without

due process, which in this context involves notice and an opportunity to clear [one's] name," *id.*

(citing *Cannon v. Vill. of Bald Head Island*, 891 F.3d 489, 501–02 (4th Cir. 2018)).

*

ACSB seeks a protective order precluding or limiting Socol's ability to ask questions

about the topics listed in the Rule 30(b)(6) deposition notice. It argues that because the Court

previously dismissed all claims against ACSB under Rule 12(b)(6), the requested discovery is

not relevant to the remaining claims or defenses in this case. ACSB's Br. in Supp. 5 (explaining

that "all claims related to any assertion of a right to employment with the School Board or

allegations of wrongful termination have been dismissed"). It also argues that the deposition

topics are unnecessarily broad, unduly burdensome, and disproportionate to the needs of the

case. *Id.* at 3; *see also id.* at 9–11 (explaining that responding to Socol's deposition notice would

require extensive preparation). Socol disagrees. He argues that the discovery he seeks is relevant

to the truth or falsity of Hass's allegedly defamatory statements and to Haas's state of mind when

he made them. *See* Pl.'s Br. in Opp'n to ACSB's Mot. for Protective Order 10–14, ECF No. 45

("Pl.'s Br. in Opp'n"); *id.* at 13 (explaining that such discovery may support his argument that

10

"ACPS (and, by implication Dr. Haas) was seeking a scapegoat in the wake of the evident unhappiness of certain members of the [ACSB] with the furniture acquisition"). Accordingly, he contends that the topics come within the broad scope of discovery of Rule 26(b)(1). *Id.* at 10–14. Socol also argues that the topics are reasonable in scope and are not unduly burdensome. *Id.* at 14–16.

I find that some portions of Socol's Rule 30(b)(6) deposition topics are relevant to his remaining claims against Haas. Other portions are irrelevant, overbroad, and/or disproportionate to the needs of the case. Accordingly, I find it appropriate to narrow each of the deposition topics.

A.      *Topic (a) – Personnel actions taken by ACPS with regard to Socol*

Rule 30(b)(6) topic (a) asks ACSB to produce an organizational representative to testify regarding:

> Each personnel action taken by ACPS with regard to Ira D. Socol, including, without limitation, actions to hire, review, promote, investigate, and/or terminate Mr. Socol. With regard to each such action, the matter for examination includes the following: [(1)] the process used in order to determine and execute such action; [(2)] the personnel policies of ACPS related to such actions, including the authority of the superintendent and/or others to take such actions; [(3)] the existence and contents of relevant documents in possession of ACPS related to such action; and [(4)] the identity and activities of all personnel, including employees and officers of ACPS and members of the Albemarle County School Board, who participated in any way in such action.

Rule 30(b)(6) Dep. Notice 6.

ACSB concedes that information regarding "the investigation into Mr. Socol's procurement violations is at least relevant to his liberty interest and defamation claims insofar as the information gathered during the investigation formed at least part of the basis for Dr. Haas'[s] purported statements related to Mr. Socol's procurement violations." ACSB's Br. in Supp. 5–6. I agree. But I conclude that information regarding Socol's termination is also relevant

11

for the same reason. Haas was the Superintendent of ACPS at the time he informed Socol of his termination and at the time he made the allegedly defamatory statements to Moran. *See* Am. Compl. ¶ 16. It follows that information regarding ACPS's investigation and termination of Socol may have "formed at least part of the basis for," ACSB's Br. in Supp. 5–6, Haas's allegedly defamatory statements. The identities and activities of personnel who took part in this investigation and termination (sub-part (4)) are also relevant. Sub-parts (1), (2), and (3) are relevant only to the extent that they relate to ACPS's investigation and termination of Socol.

The remaining portions of topic (a) seek a broad array of information that has little relation to Socol's remaining claims. ACSB has explained that Socol "held multiple different positions while employed by the School Board, was interviewed and hired for each such position, and had multiple performance reviews." ACSB's Br. in Supp. 6. Moreover, it argues that "[n]one of the facts related to such topics are germane to [Socol's] liberty interest or defamation claims." *Id.* I agree. It is not clear how information about every personnel decision related to Socol over the course of his five-year employment with ACPS relates to Haas's alleged defamatory statements in August 2018 or to Haas's alleged deprivation of Socol's liberty interest. Much of what Socol has requested in topic (a) is simply unrelated to his remaining claims and is significantly overbroad. *See Eshelman*, 2017 WL 5919625, at *7 ("[C]ourts in the Fourth Circuit have concluded that a subpoena for an entire file constitutes an overbroad request where that file likely contains both relevant and irrelevant information."); *Singletary v. Sterling Transp. Co., Inc.*, 289 F.R.D. 237, 241 (E.D. Va. 2012) (finding subpoenas "seeking Plaintiff's entire employment file from his former employers" overbroad because they were "not limited to seeking only those documents" relevant to his claims); *see also Cook v. Howard*, 484 F. App'x 805, 813 (4th Cir. 2012) (affirming order granting motion to quash subpoena to non-party police

department against whom all claims had been dismissed where plaintiff sought "an inordinate array of documents from a nonparty in comparison to a limited number that may have been responsive and relevant to the remaining claims" against individual police officers). Similarly, ACSB has explained that preparing a Rule 30(b)(6) designee to testify as to all personnel decisions concerning Socol would be unduly burdensome. ACSB's Br. in Supp. 9–10 (explaining that doing so "would require at least two School Board designees, . . . both of whom would be required to locate, interview, and seek information from many current and former employees–including Mr. Socol, Dr. Pamela Moran (who is the [P]laintiff's business partner), employees who are no longer living in the area, current and former School Board members, every member of every hiring panel for every position to which Mr. Socol applied, and any employee who addressed any personnel matter for Mr. Socol, including human resources staff over the years."). I find that imposing such costs on a nonparty government agency for discovery that bears little to no relevance to Socol's remaining claims is unwarranted. *See Jordan*, 921 F.3d at 189 ("On the burden side, district courts should of course consider the dollars-and-cents costs associated with a large and demanding document production.").

Because ACSB has shown that preparing for deposition on such issues would be unduly burdensome, and because Socol has not shown that these issues have more than marginal (if any) relevance to his remaining claims, I find it appropriate to limit deposition topic (a). Socol may not depose ACSB as to his personnel actions other than investigation and termination; sub-parts (1), (2), and (3), as they relate to those other personnel actions; and sub-part (4), which concerns the identities and activities of ACPS personnel who participated in personnel decisions, except as to his investigation and termination.

B.      *Topic (b) – The Steering Committee's formation and activities*

Rule 30(b)(6) topic (b) asks ACSB to produce an organizational representative to testify regarding:

> The formation and activities of, and any investigations or internal communications related to, the A-Tech Steering Committee. With regard to the Committee, [the] matter for examination includes the following: [(1)] the process used to establish and populate the [C]ommittee; [(2)] the creation and approval of the mandate of the Committee (including the time schedule for creating and executing the mandate); [(3)] the deliberations and actions of the Committee and its members and staff regarding the acquisition of furnishings and other tangible personal property for the projects within the [C]ommittee's purview; [(4)] the existence and contents of relevant documents in the possession of ACPS related to the Committee (including, without limitation, any minutes or notes taken by Elodie Wolfe or any other person stored on ACPS information technology; [(5)] any allegations regarding violations of ACPS policy related to the activities of the Committee or any of its members or staff (including any investigations thereof); and [(6)] the identity and activities of all personnel, including employees and officers of ACPS and members of the Albemarle County School Board, who participated in any way in the formation, deliberations and/or actions of the Committee.

Rule 30(b)(6) Dep. Notice 6.

ACSB concedes that "issues related to the purchase of furniture for A-Tech by the Steering Committee are relevant" to Socol's remaining claims. ACSB's Br. in Supp. 6. But it argues that the rest of the information topic (b) seeks is overbroad, irrelevant, unduly burdensome, and disproportionate. *See id.* at 6–8, 10. By contrast, Socol views topic (b) as essential to his remaining claims. He contends, for example, that "[i]n order to know whether [Socol] unilaterally violated the procurement policies, it is necessary to know [h]ow the Steering Committee was constituted; how it made its decisions generally; the identity, authority and role of its members; how its members interacted; and how, specifically, decisions related to the acquisition of the furniture were made." Pl.'s Br. in Opp'n 12. Similarly, he argues that "the particular burdens and challenges under which the Steering Committee conducted its affairs, as well as the manner by which it made its decisions" are relevant to Haas's state of mind in making the allegedly defamatory statements. *Id.* at 14.

As written, topic (b) inquires broadly into the Steering Committee's creation, mandate, actions, and members, among other information. Information relating to the Steering Committee's purchase of furniture is relevant to Socol's remaining claims because it may shed light on Haas's state of mind in describing Socol's alleged procurement violations as "deliberate and egregious." Accordingly, I find that Socol may depose ACSB as to "issues related to the purchase of furniture for A-Tech by the Steering Committee," *see* ACSB's Br. in Supp. 6, including sub-part (3), which addresses furniture procurement, and sub-parts (4) and (5), to the extent that they relate to furniture procurement, *see* Rule 30(b)(6) Dep. Notice 6.

The remaining information sought in topic (b) has little relevance to Socol's remaining claims against Haas. While the formation, activities, investigations, and internal communications of the Steering Committee that do not relate to the procurement of furniture might be relevant if Socol had any pending claims against ACSB, Socol has not shown how they relate to his remaining claims against Haas. *See Cook*, 484 F. App'x at 813 . Socol's argument that background information about the Steering Committee's creation, mandate, action, and members could somehow have influenced Haas's state of mind in making statements about Socol's alleged procurement violations is tenuous at best. Even if some of that information might be relevant to his claims, Socol has not shown that it "likely (not just theoretically) . . . offer[s] some value over and above what [he] already has." *Jordan*, 921 F.3d at 189. Socol was a member of the Steering Committee, *see* Am. Compl. ¶ 35, and therefore already has first-hand knowledge of the kind of background information he seeks, including who the Steering Committee's members were and how it deliberated, *see id.* ¶¶ 34–35 (describing the creation and mandate of the Steering Committee), 38–49 (describing the deliberations and actions of the Steering Committee). It is not

clear that obtaining nonparty ACSB's official position on the same information would likely help Socol prove Haas's state of mind or otherwise provide any additional value.

Moreover, ACSB has shown that requiring it to prepare to testify as to the entirety of topic (b) would be unduly burdensome. *See* ACSB's Br. in Supp. 10 (explaining that preparing for deposition on topic (b) would require its designee to "devote her full time and attention to preparing for the deposition, which could take months depending upon the volume of documents and the availability of" the "at least eighteen" Committee members she would have to interview). This burden significantly outweighs Socol's "need," *Jordan*, 921 F.3d at 189, for the information he seeks, *see Cook*, 484 F. App'x at 813 (affirming district court decision to quash subpoena to nonparty where, although appellants asserted that extensive nonparty discovery "may have led to the discovery of admissible evidence," they "present[ed] no intelligible explanation of how that [was] so" and their "requests ha[d] every indicia of the quintessential fishing expedition").

Accordingly, I conclude that Socol may depose ACSB on topic (b) only as to "issues related to the purchase of furniture for A-Tech by the Steering Committee." ACSB's Br. in Supp. 6. He may depose ACSB as to sub-part (3), and he may depose ACSB as to sub-parts (4) and (5) to the extent that they relate to the purchase of furniture. He may not depose ACSB as to sub-parts (1), (2), and (6), because those sub-parts are overbroad and irrelevant to his remaining claims.

C.    *Topic (c) – ACPS's acquisition policies, their promulgation, and their enforcement*

Rule 30(b)(6) topic (c) asks ASCB to produce an organizational representative to testify regarding:

> The acquisition policies of ACPS, their promulgation to ACPS employees (in the form o[f] written materials, training, or otherwise), and their enforcement during the time period beginning January 1, 2014 until December 31, 2019, including [(1)] a statement of all instances of alleged violations of such policies by ACPS

employees during the specified time period and [(2)] the remedial or disciplinary action taken, if any, . . . by ACPS in response to each such alleged violation.

Rule 30(b)(6) Dep. Notice 7.

ACSB conceded at oral argument that the acquisition policies in effect at the time Socol allegedly violated them would be relevant to his remaining claims. Nonetheless, it contends that it has informed Socol that "procurements and application of the Virginia Public Procurement Act and the Albemarle County Purchasing Manual are handled by the Purchasing Department of Albemarle County" and that ACSB "cannot compel the employee of a third party to provide testimony on its behalf." ACSB's Br. in Supp. 11.

I agree that the acquisition policy or policies in place at the time of Socol's alleged procurement violation(s) are relevant to his remaining claims. Such policies may have informed Haas's state of mind in characterizing Socol's conduct as "deliberate and egregious." ACSB's interpretation of those policies and its explanation of them to its employees are also relevant to the way in which Haas would have understood Socol's conduct. Accordingly, to the extent that ACPS or ACSB were involved in interpreting those policies and/or explaining those policies to its employees (in the form of written materials, training, or otherwise), Socol may depose ACSB on those matters.

Moreover, Socol may not depose ACSB as to the enforcement of the acquisition policies or as to sub-parts (1) and (2) of topic (c), which address all instances of alleged violations of those policies and disciplinary actions taken in response thereto, if any. Providing such information would necessarily require ACSB to delve into non-party personnel files, which are "by their nature, highly confidential[,] and a strong public interest weighs in favor of protecting the privacy rights of non-party employees." *Bouygues Telecom, S.A. v. Tekelec, Inc.*, No. 4:05cv78, 2006 WL 8438418, at *2 (E.D.N.C. Nov. 6, 2006). Accordingly, "production of

personnel files of non-party employees is ordered only when: '(1) material is clearly relevant; and (2) the need for disclosure is compelling because the information sought is not otherwise readily available.'" *Jones v. Campbell Univ.*, No. 5:20cv29, 2020 WL 4451173, at *3 (E.D.N.C. Aug. 3, 2020) (quoting *James v. Peter Pan Transit Mgmt., Inc.*, No. 5:97cv747, 1999 WL 735173, at *11 (E.D.N.C. Jan. 20, 1999)).

Socol argues that information about prior alleged acquisition policy violations is relevant to "Dr. Haas'[s] understanding of the relevant procurement policies, the history of their interpretation and enforcement, and the appropriate disciplinary response (if any) for alleged violations of such policies." Pl.'s Br. in Opp'n 14. Although Haas's understanding of the relevant policies and their interpretation/enforcement over time may be relevant to Haas's state of mind in making the allegedly defamatory statements, Socol has directed his inquiry at the wrong entity. If Socol seeks such information, he should depose Haas directly. *See Jordan*, 921 F.3d at 189 (explaining that a party generally should not subpoena a nonparty to produce discovery unless the nonparty "can offer important information that cannot be obtained from the party directly"). Moreover, Socol has not shown how obtaining ACSB's position on enforcement of the relevant policies over time would help him prove Haas's state of mind or how obtaining information on other alleged violations of the relevant policies would be relevant to whether his own actions were, in fact, "deliberate and egregious." *See id.* at 191 (explaining that even if the subpoenaed nonparty "might have additional, helpful evidence" on the requested topics, the requesting parties had failed to explain why the nonparty was "an appropriate source given the alternatives"); *Cook*, 484 F. App'x at 813  (affirming district court's finding that nonparty police department's "[d]ocuments and records containing [its] training materials, performance reviews, internal investigation procedures, and all other allegations of misconduct for a ten-year period"

were unrelated to plaintiff's remaining claims against two individual police officers). And, compelling ACSB to prepare for deposition on such topics would be unduly burdensome. *See* ACSB's Br. in Supp. 9, 11 (arguing that this request sweeps broadly into confidential personnel files regarding disciplinary actions that are unrelated to Socol's remaining claims); *see also Jordan*, 921 F.3d at 189 (explaining that the court should consider whether a nonparty subpoena "impose[s] a burden by invading privacy or confidentiality interests"). Furthermore, under topic (b)(5), the court will allow Socol to inquire about violations of procurement policy related to furniture acquisition by the Steering Committee because any such instance would be closely related to his own alleged violations of policy and would provide a reasonable gauge of his conduct.

## V. Conclusion

For the foregoing reasons, ACSB's Motion for Protective Order, ECF No. 42, is GRANTED in part and DENIED in part. Specifically, I conclude that Socol's Rule 30(b)(6) deposition of ACSB may proceed as to the following:

(1)     For topic (a), Socol may depose ACSB as to information regarding ACPS's investigation and termination of Socol. To the extent that they relate to ACPS's investigation and termination of Socol, Socol may also inquire as to the topics listed in sub-parts (1), (2), (3), and (4).

(2)     For topic (a), Socol may not depose ACSB as to information on all other personnel actions regarding Socol or sub-parts (1), (2), (3), or (4), as they relate to those other personnel actions.

(3)     For topic (b), Socol may depose ACSB as to "issues related to the purchase of furniture for A-Tech by the Steering Committee," *see* ACSB's Br. in Supp. 6,

including sub-part (3), which addresses furniture procurement, and sub-parts (4) and (5), to the extent that they relate to furniture procurement.

(4)     For topic (b), Socol may not depose ACSB as to issues unrelated to the purchase of furniture for A-Tech by the Steering Committee; sub-parts (4) or (5) on issues unrelated to furniture procurement; or sub-parts (1), (2), and (6).

(5)     For topic (c), Socol may depose ACSB as to the acquisition policy or policies in place at the time of Socol's alleged violation thereof and ACSP/ACSB's interpretation and promulgation of those policies to its employees.

(6)     For topic (c), Socol may not depose ACSB as to the enforcement of the acquisition policies or as to sub-parts (1) and (2).

It is so ORDERED.

The Clerk shall send a copy of this Memorandum Opinion & Order to the parties.

ENTER: June 25, 2021

Joel C. Hoppe
U.S. Magistrate Judge